Welcome to the Ninth Circuit. We're glad to have counsel here. I'm glad to be here with my colleagues, Judge Hawkins and Judge Collins, and we'll go ahead and start with the calendar. Just pay attention to the clock. If you want to reserve time for about a let us know, and then try and wrap up as your time is getting close. We've got four arguments set today. We had five, but we're going to hold one over the last one of the day. We're going to hold over. So we've got four arguments that we're going to hear today. The first one will be United States v. Sapalasan, if I got that right. I probably didn't. But case number 21-30251. Thank you. If I could reserve one minute for rebuttal. Absolutely. Good morning and may it please the Court. My name is Thomas Weaver and I represent Markanthony Sapalasan. There we go. Okay. Thank you. We've been instructed. Under the precedent of Illinois v. Lafayette and Florida v. Wells from the U.S. Supreme Court, inventory searches are lawful when three criteria are met. First, the person is lawfully under arrest. Second, the search is incident to incarceration. And third, that the search is... You said this is under Lafayette. Where is the requirement that it is incident to incarceration? I mean, that was obviously what was at issue in the case. But do you think... You read Lafayette, I take it, to say that unless there's... Unless it's incident to incarceration, you can't do an inventory search? That's the way I read Lafayette. I will concede there's not a great deal of discussion about that. But that requirement, I think, is further modified by Florida v. Wells, which holds that the inventory search must be consistent with local law, both state law, as well as local practice. But let me ask you about that because are there cases... So here, and you've got a directed order, you know, be prepared to talk about some Alaska cases. Do you... Is your view... I mean, you didn't raise those in your brief. Is your view that those under Alaska state law? The court is correct that I did not specifically raise the three cases plus the one Ninth Circuit case. But the three Alaska cases, and quite frankly, that was my negligence. I did cite in my brief several times that the inventory search must be in accordance with local practice. There was quite a bit of discussion in the... Your brief does say that. Yes. And there's quite a bit of discussion about the local practice of the Anchorage Police Department. What I missed, and I apologize to the court, is that... And I'm going to... I'm not sure you missed it, and that's why I'm asking. Because my question is more fundamental, that we do have this case law that says that you look to state procedure. But I don't understand that, at least I'm not of a case that said the interpretation of the state constitution itself is relevant to the Fourth Amendment. That would be unusual, it seems to me, to say that a state constitutional provision, which Alaska said quite plainly, provides much greater protection than the Fourth Amendment. Why would we look to a case interpreting the Alaska state constitution and imbue that into our Fourth Amendment analysis? Well, I think the case law is clear that you look to the local practice. And I would submit that if the local practice... And here, again, there was lots of discussion about the Anchorage Police Department practices, both at the district court level and on appeal. Let's appeal this back. Do you disagree that the inventory search was conducted largely pursuant to the Alaska police policy on inventory searches? I spent quite a bit of time, because it is in the record, I spent quite a bit of time reviewing the Anchorage Police Department regulations with an eye towards that question. And I couldn't find any significant deviation from the Anchorage Police Department practices. Okay, so we have an inventory search that's conducted consistent with the police policy. So now, it sounds like the way you were claiming that this was still wrong was because of some state law that informs it, which we do have the Wanless case. And I think that, to me, that's the question here, is how far do we extend Wanless? What is the state policy that you incorporate into the Fourth Amendment analysis under Wanless? Well, and again, I will go back to Florida v. Wells, that the inventory search must be in accordance with local practice. And if it's in violation of state law, it's being conducted by a state police officer... Does Florida v. Wells say that it has to be in compliance with state law in all respects, or that you look to state law for the regularity of the procedures for conducting the inventory search? Well, I guess I'm not sure that that's a nuance that we need to get to, because under the Ziering case, the court said that a warrantless jailhouse inventory is without justification when the arrestee is not going to be incarcerated. The concern that I have is that one difference between, say, Opperman and Lafayette is that in Lafayette, the booking process itself is the only way by which the state takes custody of the item that it then inventories. So it links the ability to have custody, which is what triggers the inventory. The custody turns on the booking. But here, the custody occurred entirely independent of the booking. It occurred at the point of arrest. He got separated from the backpack. That's when it occurred. So they now have a custody, and under Opperman, the court said the question here is not whether the search was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment law to determine the overall validity. Well, I guess the police officer took custody of the backpack pursuant to an arrest, and for purposes of this appeal, I'm conceding that there was probable cause at the time of the initial seizure for the arrest. However, it's pretty clear that the probable cause had dissipated before the inventory search took place. And it's clear... Did he know that? Did he know that he had been released? I believe that he knew that, yes. Is it clear in the record? I believe that is clear. He went home, didn't he? Yeah, he was released. He went home. Well, but... Several hours. I think the question, though, I had the same question, and I'm not sure that it's relevant, but Officer Yoon drops him off. As far as Officer Yoon knew, this was somebody who was caught at the scene with one bullet missing from his gun and a dead man at the site. So he's probably thinking, that's why you're not contesting probable cause. Then they clear him, but Officer Yoon was out doing other things. So I guess the question is, did they call out on the radio to tell Officer Yoon, hey, he's been released? My reading of the record is that there was a several hour gap between my client's release inventory search. No, I think that's probably true. But that doesn't mean that Officer Yoon, who was out doing his other rounds, he wasn't at the police station. So he wouldn't have necessarily known that. Last he knew... Except that he was asked why he retained the backpack rather than giving it to the detectives. And he gives a very non-responsive answer. I think the inference here is that he knew that this case had been turned over to the detectives and the detectives had released him several hours. I will confess I didn't read the- Let me ask you this. Is it relevant? Is it relevant? Would that change the analysis in the case? I don't think it does because the probable cause for the arrest and the initial seizure of released several hours had passed. But the probable cause had dissipated, but that probable cause is not relevant to an inventory search. I think, well, under Illinois versus Lafayette, I disagree. The person must be lawfully under arrest at the time of the inventory search. It was a valid custody. So they validly took custody of the bag. And then under Opperman, one of the things that will sustain an interest in protecting against claims that items were stolen while it was in police custody. So it had properly been taken into police custody. So why isn't the valid interest in saying, well, here's... We had it for hours and so we took an inventory. So now we know when we give it back to you what was in it and you can't claim it had the Hope Diamond. Well, I understand that that may be part of the underlying rationale for the inventory search, but we still have these criteria that have been clearly established from the U.S. Supreme Court of what it takes in order for it to be reasonable. And one of those things is that the person has to be lawfully under arrest and the search has to be incident to incarceration at the time of the search. And those things are lacking in this case. Okay. We'll give you time for rebuttal. Thank you. Good morning and may it please the court. Assistant United States Attorney James Klugman on behalf of the United States. Let me pose a hypothetical to you. There's a crime. The police are at odds on how to solve it. And they put out a public statement asking for help from the community. And a woman responds to that request and goes down to the station house and says, I saw what happened and I want to tell you about it and help you solve this crime. She steps into an interview room, but outside the interview room, she leaves her purse and she goes in for the interview and she talks to law enforcement. And as far as they can tell, she tells an absolutely accurate description of what happened. Could that purse be searched? Your Honor, to get into this courtroom this morning, all of my personal effects were searched. Was the yes or no? I think the answer is yes. The Anchorage Police Department can screen people coming into the secure area of the department. So your answer is it wouldn't be, they wouldn't be able to do it pursuant to an inventory search, but they could do it pursuant to some other, just general security. As a practical matter, the police would not seize that property long-term for safekeeping. So I don't think it would take place as an inventory search. She's passed through security and she simply leaves her purse in the chair outside the interview room. Under those circumstances... For the police to search that purse? Under those circumstances, the interest that would be served by the inventory search exception would have already been met. Prescription for birth control? That would be okay? My answer, Your Honor, is under those circumstances, the security screening would have already satisfied any additional interests that would be served otherwise by the inventory search exception. I don't think there would be an entitlement for a second search at that point. Your opponent argues that Lafayette requires for a valid inventory search either on the way to incarceration or pursuant to an arrest. This is an individual who was initially under arrest, brought to the station house. Apparently, law enforcement concluded he was not involved. They drove him home. Have you found any cases that allowed an inventory search where there was no custody, no incarceration, and no arrest? Yes, Your Honor. Certainly, Illinois... In Alaska? No. I found one in Colorado that was presented to the United States Supreme Court where the precise argument that's being urged by Mr. Sopelasin that Lafayette requires incarceration was also presented, and the Supreme Court explicitly said that it is not. Which case? That's Colorado v. Bertin, Your Honor. Colorado versus Bertin. That's a 1987 case. Correct. And they actually... I didn't remember them... I'll take another look at the case. I didn't remember them expressly rejecting that argument there. Where are you getting that? That would make this case a lot easier. On page 373 of the opinion, they write, our opinion in Lafayette did not suggest that the station house setting of the inventory search was critical to our holding in that case. Both in the present case and in Lafayette, the common governmental interests described above were served by the inventory searches, and they talk about those interests of safeguarding the property. So under the government's theory, we just need to look at the purposes of the inventory search. What about arrest? Does it have to be pursuant to an arrest? The first hypothetical to Judge Hawkins suggests it does need to be. It can't just be anybody coming in for any other lawful purpose. I think when the police legitimately acquire a piece of property that potentially is going to be returned to the owner, is subject to a claim of right from the legitimate owner, where they have an interest in ensuring that they're not being accused of misappropriating that property, that the owner's interests in that property are legitimate, then those would be, for instance, if Mr. Sopelasin had been taken into custody or otherwise left the scene and abandoned his backpack, so the police are collecting it for safekeeping, they have those same interests. If Mr. Sopelasin had been incapacitated somehow, so the police couldn't determine what his role was. So they pick up a lost and found backpack. They don't know whose it is. They just find it, you know, and they're going to put it in the lost and found. Is an inventory search triggered in that? I believe it is, and I believe that's what that... And if they find drugs in it during that inventory search, then the person comes in to say, I lost my backpack, and you're like, okay, thank you. Now you're under arrest. Well, I don't know that that's how that scenario would play out necessarily. But yeah, I think what would happen is exactly what happened here, that they would stop the inventory search once they located the incriminating evidence, apply for a search warrant, and proceed with their criminal investigation. Certainly, I think they have a legitimate interest in not lugging in 150 grams of methamphetamine into secure storage, especially the area that's intended for property that's being held for safekeeping. Have you found any case that justifies a search based on what was found? I'm sorry, Judge Hawkins, I'm not sure what... Have you found any case where a search was authorized based on what was found pursuant to the search? On what was found pursuant to an inventory search? Any search. If your question is, could the fact that they found incriminating evidence retroactively justify the inventory search, the answer is, of course, no. I think this case is representative. Why argue what was found? It's either a lawful search or it's not. Your Honor, I think this case illustrates the legitimate interest that the inventory search exception serves and illustrates the harms that could, some of the harms, certainly not all of them, that could occur if the police are unable to pursue this kind of investigatory technique. I certainly am not suggesting that the fact that there was contraband in this backpack makes the inventory search any more legitimate than if there had not been. Thank you. Can I ask about the policy? Because I thought the policy required the inventory to be conducted immediately. That doesn't seem to have happened here. He had it in what the passenger seat of it going all around doing all kinds of other things and that doesn't seem consistent with the policy. It doesn't. I think the policy is perhaps somewhat ambiguous in that it says immediately, but also no later than the end of that shift. Can I ask about that? Because the no later than, I was initially of that view as well, but then as I started looking at that, it looks like the no later than the end of the shift is when the material, when the items have to be logged. So it seems to break it up and I don't, again, I don't know whether this is relevant, but it seems to break it up to say you've got to conduct the inventory search immediately, but then you have until the end of the day to actually put the items where they need to be. Does that make? I think that's a fair reading and I think certainly it was conceded that that would have been best practices. I also think the policy recognizes that the Anchorage Police Department is a small department. The exigencies of their work may require that, you know, someone can't start processing this evidence literally immediately. And certainly I think the minor deviation, especially since there's certainly no prejudice to Mr. Sopilas and had been searched even earlier. I mean, it seems to me that the base at heart, what you're saying is at least for purposes of this case, maybe they can do an inventory search without an arrest, but for purposes of this case, there's no question of a lawful arrest. So now we're just dealing with whether he's released. If he was carrying that back, Officer Yoon was carrying that backpack around. He gets the calls and says, hey, by the way, Mr. Sopilas has been taken home. He asked for his backpack. You've still got it. Can you just drop that by his house? Even in those circumstances, your position is, well, no, an inventory search is still warranted because if he just hands off the backpack, then he could still say, well, you know, I had my iPod and it's gone or my Hope Diamond and it was gone. I think there would still be interest, certainly much weaker interest, not served nearly as strongly as the facts in the record here where there's no indication. But what's the difference between those two? I mean, because to me, the reason Lafayette, I mean, if we're going to interpret Lafayette to apply here, it's because the underlying purposes, you know, are still relevant. And that's what I'm getting. I mean, are they still relevant if he's been released? Absolutely, Your Honor. But they're even more relevant here where the police don't know how long they're going to be required to retain possession. I see I'm almost out of time. I thought he said, I thought the officer said that he did the inventory because he was going to book it into evidence on the murder, which didn't seem to me to make sense. Did I misread that? I think the testimony was equivocal, but the magistrate judge did make the factual finding and the district judge adopted it that he was motivated, at least in part by the desire to inventory the property appropriately. That's does the record tell us the size of the Anchorage police force? I'm not sure that that is in the record, Your Honor, because you just argued it's a small police force. I did mention that, Your Honor. I don't know that that's explicitly referenced in the record. Can I ask, other than the Bertine case, there's no other court of appeals case in the last 30 plus years addressing this question? We were unable to locate one that's on all fours for this, Your Honor. If I could just make one brief point in response to the court's order last Thursday regarding those cases. The argument that this surge violated state law as opposed to violated the Fourth Amendment was not presented to the district court. It was not even presented in the appellate briefing. It is the government's position that under... This issue is waived. We don't even... But don't we have a duty to look at what the meaning of our case law is, specifically wanless, even if it's not raised? No, Your Honor. Under United States v. Guerrero, which is 921 F3rd 895, a case from this court in 2019, the holding of that case is that when a new theory for suppression is presented for the first time on appeal, the proponent of that theory needs to show good cause. So it's even stronger than... So even if we want to rule in your favor on this and reject the application of state law and cabin wanless, we don't... Your position is we don't have the... It seems like we would have discretion. It's waived, but it's a legally... I mean, this is a legal issue. I think under Guerrero, Your Honor, Mr. Sopilas would have to show good cause. It's even stronger than plain error. He would have to show good cause for why he didn't present it to the district court by the motion... Because of the suppression aspect of this case. Right. Under Rule 12 C3's case. Thank you. Thank you. I wanted to address the Bertin case because I read it differently than the government does. In Bertin, the person was lawfully under arrest and on their way to jail pursuant to a DUI arrest. And the inventory search was done pursuant to an impound. And I think that the it was a vehicle, it's in the field, it's being... It's going to be taken away by a tow truck. And so I think the justifications under... I give you that. I mean, because it seems like vehicles... I mean, that was kind of my question before. If you just find property that's abandoned and it seems like that's different with vehicles than it would be with a purse. But at the end of the day, the reasoning is the same. Well, except that this court specifically addressed it in Wanlis. The court said in Wanlis, as Opperman and Bertin make clear, the federal law on inventory searches by state and local police officers is that it must be conducted in accordance with the official procedures of the relevant state or local law. And that's what this court said in Wanlis. But that's what I'm struggling with because local law is different than state constitutional law, I think. Well, except that if the... Here in the state of Washington, which is where I primarily practice, under state law, the court... An impound is illegal if there's a lawful driver to drive away the car. That's how it's been interpreted under Article 1, Section 7 of the Washington Constitution. Could an officer do a lawful inventory search if it's illegal under state law? In that hypothetical you just said, I mean, if there's someone who could drive the car away, then the custody, taking it into custody is wrongful. And I agree with you that it is an essential element under the Supreme Court's cases that the inventory search be done pursuant to a lawful custody. But here we have a lawful custody. There's no question that he had physical custody of the bag properly. He'd been... Sopolison had been separated from the bag. At that point, why isn't the inventory search reasonable under Fourth Amendment? There's a valid government custody of an item of property. Well, again, you're the judge. You're going to decide how it's going to be decided. But from my perspective, once the probable cause had dissipated, the rationale for holding on to the item had dissipated as well. I have just one quick question. The cases you cite that say the search must be consistent with local law, do any of those cases say it has to be consistent with police policy? I believe that was the issue in Florida v. Wells. All right. Thank you. Thank you. Thank you, both counsel for your arguments. We'll submit the case now and...
judges: HAWKINS, NELSON, COLLINS